UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SASHA ARMELIN | CIVIL ACTION |
| VERSUS | CASE NO. 17-4980 |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY | SECTION: "G"(3) |

## ORDER

Pending before the Court is Defendant Government Employees Insurance Company's ("GEICO") "Motion for Summary Judgment or, Alternatively, Partial Summary Judgment."[1] GEICO alleges that Plaintiff Sasha Armelin ("Plaintiff") is not entitled to recover for her uninsured/underinsured motorist ("UM") claim because Plaintiff executed a "Release."[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion to the extent that GEICO seeks the dismissal of Plaintiff's claim that GEICO acted in bad faith, but deny the motion to the extent that GEICO requests the dismissal of Plaintiff's UM claim.

## I. Background

On or about May 23, 2016, Plaintiff alleges she was in an automobile collision with Andrew Barback in Louisiana.[3] Plaintiff contends that Andrew Barback was at fault and was issued a citation for careless operation of a motor vehicle.[4] Plaintiff alleges that GEICO had previously

---

[1] Rec. Doc. 11.

[2] *Id.*

[3] Rec. Doc. 1-1.

[4] *Id.*

1

issued her parents a UM policy, which covered Plaintiff and her vehicle at the time of the accident.[5] On April 11, 2017, Plaintiff executed a "Release," which discharged Andrew and David Barback, as well as State Farm Insurance Company, from liability resulting from the accident. Because of the Release, GEICO alleges that Plaintiff is not entitled to recover damages under the UM policy.[6]

On April 26, 2017, Plaintiff filed suit in the 23rd Judicial District Court for the Parish of St. James.[7] On May 17, 2017, GEICO removed the case to this Court.[8] On February 5, 2018, GEICO filed the instant motion for summary judgment.[9] GEICO's motion for summary judgment was set for submission on March 14, 2018. Pursuant to Local Rule 7.5, Plaintiff's opposition was due by March 9, 2018. Plaintiff did not file an opposition to GEICO's motion until March 15, 2018.[10] Therefore, the opposition was not timely filed.

On March 16, 2018, GEICO filed a motion to strike Plaintiff's opposition, arguing that the opposition should not be considered because it was not timely filed.[11] The same day, Plaintiff also filed a motion for leave to file its opposition, asserting that the opposition was not timely filed due to a clerical error.[12] On March 19, 2018, GEICO filed an opposition to Plaintiff's motion for leave

---

[5] *Id.*

[6] Rec. Doc. 11-2.

[7] Rec. Doc. 1-1.

[8] Rec. Doc. 1.

[9] Rec. Doc. 11.

[10] Rec. Doc. 15.

[11] Rec. Doc. 17.

[12] Rec. Doc. 18.

to file.[13] The Court has broad discretion as to whether to consider untimely filings.[14] Accordingly, the Court will consider the untimely opposition to the motion for summary judgment, grant Plaintiff's motion for leave to file, and deny the motion to strike.

## II. Parties' Arguments

*A.    GEICO's Arguments in Support of the Motion for Summary Judgment*

In the motion, GEICO asserts that Georgia law governs this dispute because a "choice of law" provision contained in Plaintiff's insurance policy requires the application of Georgia law, which would require dismissal of Plaintiff's claims.[15] GEICO contends that the choice of law provision is presumed valid under Louisiana law.[16] GEICO also points to a Fifth Circuit decision, which GEICO asserts held that an insurance contract's choice of law provision is enforceable under Louisiana's conflict of law statutes.[17]

Alternatively, GEICO argues that even if the policy's choice of law provision is found to be invalid, Georgia law would still apply because Georgia's policies "would be most seriously impaired if its law were not applied."[18] Relying on the factors laid out in Louisiana Civil Code article 3537,[19] regarding conflicts of law of conventional obligations, GEICO asserts that Plaintiff has significant contacts to Georgia and that the GEICO policy "was a Georgia contract, negotiated

---

[13] Rec. Doc. 21.

[14] *See Nelson v. Star Enter.*, 220 F.3d 587 (5th Cir. 2000) ("District courts have broad discretion to consider untimely oppositions to motions for summary judgment."); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995) (holding that "the district court properly exercised its discretion by accepting Appellee's motion out of time").
[15] Rec. Doc. 11-2 at 7.

[16] *Id.* (citing *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation and Constr., LLC*, 166 F. Supp. 3d 684 (E.D. La. 2016)).

[17] *Id.* (citing *Louisiana Generating L.L.C. v. Illinois Union Ins. Co.*, 719 F.3d 328 (5th Cir. 2013)).

[18] *Id.* at 8 (citing LA. CIV. CODE ANN. art. 3537).

[19] *Id.* (citing LA. CIV. CODE ANN. art. 3537).

3

and issued in Georgia, insuring Georgia named insureds and Georgia vehicles."[20] GEICO contends that this case is similar to *Abraham v. State Farm Mutual Automobile Insurance Co.*, where the Fifth Circuit held that Mississippi law applied to an accident that occurred in Louisiana.[21] There, the plaintiff was a dual resident of Mississippi and Louisiana who held a Mississippi insurance policy for a vehicle registered in Mississippi.[22] Therefore, GEICO argues that Georgia law is applicable here.[23]

According to GEICO, under Georgia law, an insurance company's liability for UM coverage derives from the tortfeasors' liability, and "[o]nce the plaintiff released all claims against the tortfeasor, there is no basis of liability on which the defendant insurance company can be held responsible under the terms of the policy."[24] GEICO asserts that Plaintiff executed a complete release of Andrew and David Barback "with only a reservation of rights as to uninsured/underinsured motorist coverage."[25] Therefore, GEICO argues that because Plaintiff executed a complete release of the Barbacks, GEICO contends it is entitled to summary judgment.[26]

---

[20] *Id.*

[21] *Id.* at 9 (citing 465 F.3d 309 (5th Cir. 2006)).

[22] *Id.* (citing 465 F.3d at 309).

[23] *Id.*

[24] *Id.* at 10 (citing *Rodgers v. St. Paul Fire & Ins. Co.*, 492 S.E. 2d 268, 269 (Ga. App. 1997)).

[25] *Id.*

[26] *Id.*

Last, GEICO asserts that GEICO cannot be held in bad faith for denying Plaintiff's claim under her policy because Plaintiff's complete release of the tortfeasors constitutes "a reasonable basis to defend the claim."[27]

## B. *Plaintiff's Opposition to GEICO's Motion*

In opposition, Plaintiff argues that the contractual choice of law provision cited by GEICO is not applicable and that the Court should conduct its conflicts of law analysis by turning to Louisiana Civil Code Article 3542, which governs conflicts of law for delictual and quasi-delictual obligations.[28] Considering the first factor, which looks to the contacts of each state to the parties and events that give rise to the tort, Plaintiff asserts that Louisiana has more substantial contacts to the dispute than Georgia because the car accident occurred in Louisiana and Plaintiff was living in Louisiana at the time of the accident.[29] Plaintiff also avers that Georgia's only contact to the dispute is the insurance policy's choice of law provision and that Plaintiff was not involved in the procurement of the policy.[30]

Moreover, Plaintiff addresses the four policy factors considered by the Fifth Circuit in *Marchesani v. Pellerin-Minor Corp.* in its choice of law analysis with respect to tort claims.[31] Plaintiff asserts each factor favors application of Louisiana law in the present case.[32] Last, Plaintiff asserts that even if Georgia law applies, Georgia law does not bar her from recovery under the

---

[27] *Id.* at 11.

[28] Rec. Doc. 15 at 2.

[29] *Id.* at 2–3.

[30] *Id.* at 3.

[31] *Id.* (citing 269 F.3d 481 (5th Cir. 2001)).

[32] *Id.*

5

policy. Plaintiff contends that although she executed a release, it was limited and specifically reserved her right to make UM claims.[33]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[35] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[36] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[37] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[38]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes

---

[33] *Id.* at 7.

[34] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[35] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[36] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[37] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[38] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

demonstrate the absence of a genuine issue of material fact.[39] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[40] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[41] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[42] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.

## IV. Analysis

### A. *Whether the Choice of Law Provision in the Policy Applies*

GEICO asserts that Georgia law applies to the instant dispute because of a choice of law provision contained in the policy.[43] In opposition, Plaintiff asserts that the instant case requires a conflicts of law analysis for delictual and quasi-delictual obligations, as opposed to conventional obligations.[44] Moreover, Plaintiff asserts that applying Georgia law would prevent Plaintiff from making a full recovery, which is the "stated purpose of Louisiana's uninsured/underinsured legislation."[45]

---

[39] *Celotex*, 477 U.S. at 323.

[40] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[41] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[42] *Little*, 37 F.3d at 1075.

[43] Rec. Doc. 11-2 at 7.

[44] Rec. Doc. 15 at 2.

[45] *Id.* at 5.

7

When sitting in diversity, a district court applies the choice of law rules of the state in which it sits.[46] Louisiana law "generally gives contracting parties the freedom to choose which state's law will govern disputes arising out of the contract."[47] Pursuant to Article 3540 of the Louisiana Civil Code, contractual choice of law provisions are presumed valid unless the "chosen" law contravenes the public policy of the state whose law would apply absent the choice of law provision—here, Louisiana.[48] The Fifth Circuit has explained, "One state's law does not violate another state's public policy merely because the laws of the two states differ."[49] The Fifth Circuit has also highlighted the official comments to Article 3540, which state "only strongly held beliefs of a particular state qualify for the characterization of 'public policy.'"[50]

The party who seeks to invalidate a contractual choice of law provision bears the burden of proving either that the provision is invalid or that the application of the "chosen" law would violate Louisiana's public policy.[51] If a contractual choice of law provision is valid and does not contravene Louisiana's strongly held public policy, the court must still determine whether the dispute falls within the scope of the clause.[52]

---

[46] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).

[47] *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994).

[48] La. Civ. Code art. 3540; *see also Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 943 (5th Cir. 2000).

[49] *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982).

[50] *Cherokee Pump & Equip. Inc.*, 38 F.3d at 252 (quoting La. Civ. Code art. 3540 cmt. f).

[51] *Barnett v. Am. Const. Hoist, Inc.*, 2011-1261 (La. App. 1 Cir. 2/10/12); 91 So. 3d 345, 349; *Neivens v. Estrada-Belli*, 2017-0225 (La. App. 4 Cir. 9/27/17); 228 So. 3d 238, 246; *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr., LLC*, 166 F. Supp. 3d 684, 690 (E.D. La. 2016).

[52] *Dorsey v. N. Life Ins. Co.*, No. CIV.A. 04-0342, 2005 WL 2036738, at *4 (E.D. La. Aug. 15, 2005).

Here, the policy's choice of law provision states, "The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of Georgia."[53] Although Plaintiff asserts that the choice of law provision is not applicable because the law of delictual and quasi-delictual obligations applies to the instant choice of law analysis, the Fifth Circuit instructs district courts to apply the law of conventional obligations when addressing conflicts of law in the context of an UM coverage dispute.[54] Therefore, the law of conventional obligations, which includes Article 3540, governs the instant dispute.

While Plaintiff does not expressly assert that the choice of law provision is unenforceable because it violates Louisiana public policy,[55] Plaintiff does assert that the application of Louisiana law is necessary to prevent GEICO "from arbitrarily denying this claim" and would promote the stated purpose of Louisiana's UM legislation of providing "full recovery for innocent accident victims."[56] However, in *Champagne v. Ward*, the Louisiana Supreme Court, after conducting a conflict of law analysis, applied Mississippi law in a UM coverage case, even though Mississippi law left no redress for a plaintiff's injuries.[57] Thus, Plaintiff fails to meet her burden of showing that the clause would contravene Louisiana's public policy.

Last, the Court must determine whether the instant dispute falls within the scope of the choice of law provision. Plaintiff does not assert that the choice of law provision is limited in any

---

[53] Rec. Doc. 11-5 at 22.

[54] *See, e.g., id.* Plaintiff provides no support for why tort law would govern the contract claim, except to note that Plaintiff's parents, not Plaintiff, procured the policy; so Plaintiff should not be bound by the choice of law provision. Plaintiff cannot attempt to seek relief under the policy, but then cherry-pick which sections apply to Plaintiff merely because Plaintiff's parents purchased policy.

[55] Rec. Doc. 15 at 5.

[56] *Id.* at 6.

[57] *Champagne v. Ward*, No. 2003-3211 (La. 2005); 893 So. 2d 773, 789.

9

manner that would restrict the clause's application. Further, the dispute concerns an interpretation of the policy's coverage, and the choice of law provision expressly states that Georgia law would govern the interpretation of the policy. Because Plaintiff has failed to meet her burden in proving that the choice of law provision as contained in the policy is invalid or violates Louisiana's public policy, Georgia law governs this dispute.

### B. If the Choice of Law Provision Did Not Apply, Whether Georgia or Louisiana Law Applies to the Present Case

Alternatively, even if the choice of law provision does not apply, GEICO asserts that Georgia law would still apply pursuant to Louisiana Civil Code Article 3515 and Article 3537, which control a conflicts of law analysis regarding conventional obligations. As stated above, Louisiana's choice of laws rules apply to the present case because the Court is sitting in diversity. In *Champagne v. Ward*, which has been adopted by the Fifth Circuit,[58] the Louisiana Supreme Court set forth the proper choice of law analysis for automobile accident cases that involve parties and underinsured/uninsured motorist insurance policies from states other than Louisiana.[59] The court held that if Louisiana law differs from the law of a foreign state, a determination as to the governing law must be made in accordance with the Louisiana Civil Code's conflict of laws principles.[60]

Thus, according to *Champagne*, the Court must first determine whether the UM law of Louisiana and Georgia differ.[61] The Louisiana Supreme Court has determined that an accident

---

[58] *Abraham*, 465 F.3d at 611.

[59] 893 So. 2d 773, 777 (La. 2005).

[60] *Id.* at 787.

[61] *Id.* at 786; *Abraham*, 465 F.3d at 611.

victim does not forfeit any right against his UM carrier by releasing the tortfeasor, who allegedly caused the accident.[62] In contrast, in Georgia, "[a] claimant who executes a general release of the tortfeasor cannot recover UM benefits, because UM claims 'are derivative in nature, requiring the injured party to establish the legal liability of the uninsured or underinsured motorist, which he or she cannot do if he or she has released that motorist from liability.'"[63] Consequently, because the applicable law of the two states differs, the Court must conduct a conflict of laws analysis in accordance with the Civil Code.[64]

The Fifth Circuit has applied Louisiana Civil Code Article 3515 and Article 3537 when conducting a conflict of laws analysis regarding UM coverage. "Article 3515 states that when a case involves contacts with other states, the applicable law is that 'of the state whose policies would be most seriously impaired if its law were not applied to that issue.'"[65] Under Article 3515, the factors used to determine which state's policies would be most seriously impaired are: "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."[66]

---

[62] *Carona v. State Farm Ins. Co.*, No. 84-0287 (La. 1984); 458 So. 2d 1275, 1279.

[63] *Newstrom v. Auto-owners Ins. Co.*, 807 S.E. 2d 501, 502 (Ga. App. 2017) (quoting *Moon v. Mercury Ins. Co. of Ga.*, 253 Ga. App. 506, 507 (Ga. App. 2002)).

[64] *See Abraham*, 465 F.3d at 611.

[65] *Id.* (quoting La. Civ. Code Ann. Art. 3515).

[66] La. Civ. Code Ann. Art. 3515.

Article 3537, which is intended to be read in conjunction with Article 3515,[67] also enumerates a list of factual contacts to determine which state's policies would be most impaired by the failure to apply its law. Article 3537 governs conflict of laws for conventional obligations and provides,

> that state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

The Fifth Circuit has stated that "applying [Louisiana's choice of law] principles, Louisiana courts generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy."[68] Moreover, while a plaintiff's residence is a factor to be considered in making the choice of law determination, it is not determinative.[69]

In *Abraham v. State Farm*, the Fifth Circuit analyzed a similar situation as the instant case, as a plaintiff was driving his vehicle in Baton Rouge, Louisiana, when an uninsured defendant's vehicle collided with his vehicle.[70] The Fifth Circuit reversed the district court's determination that Louisiana law applied to the case finding instead that Mississippi law should govern, which foreclosed the plaintiff's ability to recover a statutory penalty and attorney's fees for bad faith, applied to the subsequent UM coverage dispute.[71] In that case, considering the place of domicile

---

[67] *Abraham*, 465 F.3d at 612.

[68] *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999).

[69] *Abraham*, 465 F.3d at 613 (citing *Champagne*, 893 So. 2d at 789).

[70] *Id.* at 610.

[71] *Id.* at 614.

or habitual residence of the plaintiff, the trial court determined that plaintiff was a resident of both Mississippi and Louisiana after evaluating a number of facts.[72] Specifically, the Fifth Circuit noted that the trial court considered: 1) the plaintiff spent part of his year at his residence in Mississippi; 2) he spent part of the year living with his daughter in Louisiana; 3) he holds a Louisiana driver's license; and 4) he is domiciled in Mississippi.[73] Moreover, in terms of the location of the negotiation, the formation, and the object of the contract, the plaintiff's insurance policy was issued in Mississippi, and his car was registered in Mississippi.[74] Considering these facts, the Fifth Circuit held that Mississippi law controlled because "public policy interest in the uniform application of its insurance laws" outweighed Louisiana's competing interests.[75] Therefore, the Fifth Circuit reversed the district court's determination to apply Louisiana law, and because the parties conceded that Mississippi law did not require a tender payment by an insurance provider, the Fifth Circuit rendered judgment for the insurance company.[76]

In terms of the place of negotiation and formation of the transaction, the insurance policy at issue here was negotiated and formed in Georgia. Moreover, the policy was issued in Georgia, and, as stated above, "Louisiana courts generally choose the law of the state in which the insurance policy in question was issued . . . ."[77] Considering the place of domicile and habitual residence of the Plaintiff, which is not determinative, Plaintiff lived in Louisiana at the time of the accident as

---

[72] *Id.* at 610.

[73] *Id.* Although the Fifth Circuit did not explicitly state what point of time determined his residency, the Louisiana Supreme Court considered a plaintiff's residency "[a]t the time of the accident" in *Champagne*. 893 So. 2d at 775.

[74] *Abraham*, 465 F.3d at 614.

[75] *Id.*

[76] *Id.*

[77] *Woodfield*, 193 F.3d at 360.

13

a student at LSU, but she also was a Georgia native who returned to Georgia shortly after the accident. As to the place of performance of the contract and the location of the object of the contract, the payments for the policy were made in Georgia by Georgia residents for the purpose of insuring cars that were garaged in Georgia. In upholding the justified expectations of the parties and facilitating the orderly planning of transactions, "[P]laintiff's premium for UM coverage was based on the application of [Georgia] law to the contract."[78] Applying Louisiana law to the insurance policy "would result in the abrogation of a [Georgia] contract," considering that the UM laws of Louisiana and Georgia differ and the contract was formed in Georgia.[79] Thus, similar to *Abraham*, despite the fact that Plaintiff's accident occurred in Louisiana where she asserts she was living at the time, Georgia's "public policy interest in the uniform application of its insurance laws" outweighs Louisiana's competing interests. Consequently, regardless of the policy's choice of law provision, Georgia law applies to the instant case.

### C. *Whether Plaintiff Executed a General or Limited Release*

Plaintiff asserts that she did not execute a general release, but rather executed a limited release, which retained her right to bring the UM claims. When interpreting a release, the Court of Appeals of Georgia has provided,

> A release or settlement agreement is a contract subject to construction by the Court. It is governed by state law applicable to contracts in general. The cardinal rule of construction is to determine the intention of the parties. Where the terms of a written contract are clear and unambiguous, the [C]ourt will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it.[80]

---

[78] *See Champagne*, 893 So. 2d at 789.

[79] *Id.*

[80] *Tisdale v. Westmoore Group, LLC*, 341 Ga. App. 445, 448 (Ga. App. 2017).

Moreover, Section 33-24-41.1 of the Code of Georgia sets forth that a limited release shall:

> (1) Release the settling carrier from all liability from any claims of the claimant or claimants based on injuries to such claimant or claimants; and
> (2) Release the insured tort-feasor covered by the policy of the settling carrier from all personal liability from any and all claims arising from the occurrence on which the claim is based except to the extent other insurance coverage is available which covers such claim or claims.

Finally, a limited release can only be effective if the liability insurer of the tortfeasor exhausts its policy limits.[81]

Both parties cite *Rodgers v. St. Paul Fire & Marine Insurance Co.*[82] There, a plaintiff filed a claim against his UM carrier for wrongfully denying him UM benefits.[83] The Georgia Court of Appeals stated that an "injured party who executes . . . a limited release may still proceed to judgment against the tortfeasor [and] merely limits the tortfeasor's personal liability to the amount of available insurance coverage."[84] In *Rodgers*, prior to executing a release, the plaintiff stated his intention to release his claims against the tortfeasor "pursuant to the provisions of [the Code of Georgia] § 33-24-41.1" in order to pursue his claim against his UM carrier.[85] However, the plaintiff then executed a complete release without reserving any rights or restricting the scope of the release.[86] As a result, the Court of Appeals of Georgia determined that the trial court did not err in granting summary judgment for the UM carrier because the plaintiff's executed general release of the tortfeasor extinguished his derivative liability claim against the UM carrier.[87]

---

[81] *See Wade v. Allstate Fire and Cas. Co.*, 324 Ga. App. 491, 495 (Ga. App. 2013) (citing GA. CODE ANN. § 33-24-41.1).

[82] 228 Ga. App. 499 (Ga. App. 1997).

[83] *Id.*

[84] *Id.* at 501.

[85] *Id.*

[86] *Id.*

In the instant case, Plaintiff's release states that:

the undersigned hereby releases and forever discharges Andrew and David Barback & State Farm Insurance companies . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries . . . which have resulted or may in the future develop from an accident which occurred on or about May 23, 2016 . . . .

Plaintiff then added language to the release: "Releaser hereby reserves right to make claim [f]or uninsured/underinsured motorist to the extent that any coverage is [f]ound to be available and applicable to the releaser. The present release in no way waives right of releaser to make such claim with the applicable party or parties."

As in *Rodgers*, Plaintiff asserts that she intended to execute a limited release. Additionally, as noted in *Rodgers*, Plaintiff's reservation does not explicitly limit the tortfeasor's personal liability to the amount of available insurance coverage.[88] However, unlike in *Rodgers*, Plaintiff included a reservation that indicates Plaintiff's intention to retain her UM claims in her release of the tortfeasor. Therefore, the instant case is distinguishable from *Rodgers* because Plaintiff expressed her intention in the executed release.

Moreover, in *Cook v. State Farm Mutual Auto Insurance Co.*, another Georgia Court of Appeals case, a plaintiff-insured also brought a claim against a defendant-insurer for denying his claim for UM coverage.[89] The court notes that the plaintiff intended to settle with the tortfeasor and the tortfeasor's insurer and then pursue UM coverage under his policy.[90] The plaintiff executed a release stating that he discharged the tortfeasors and their insurance companies from any and all claims, but the plaintiff struck a clause in the release applying the release to "any and all other

---

[87] *Id.* at 502.

[88] 228 Ga. App. at 501.

[89] 237 Ga. App. 400, 400 (Ga. App. 1999).

[90] *Id.* at 400–01.

persons, firms and corporations."[91] As a result, the plaintiff asserted that he preserved his rights against UM insurance carriers.[92] However, the court determined that the plaintiff did not retain his rights against the UM insurance carriers because he released all claims against the tortfeasors without reservation.[93] The court reasoned that despite striking a section of the release, the plaintiff "failed to take those steps which would have indicated, without equivocation, that his release of [the tortfeasors] was intended to allow him to retain his right to sue the insurers on their derivative liability.[94]

As stated in *Cook*, Plaintiff's reservation does not expressly "retain [her] right to sue [GEICO] on [its] derivative liability."[95] However, unlike in *Cook*, Plaintiff's reservation is not limited to "persons, firms and corporations" other than the tortfeasor. Instead, Plaintiff's reservation generally applies to her ability to make any UM claim. Therefore, the instant case is also distinguishable from *Cook*.

Finally, in *Kent v. State Farm Mutual Auto Insurance Co.*, plaintiffs brought an action alleging that their UM carrier wrongfully denied their claim for coverage following an accident.[96] Plaintiffs asserted that because they executed a limited release and settled a claim against the tortfeasor, they retained their right to make a claim against their UM carriers.[97] However, upon executing the limited release, the plaintiffs voluntarily dismissed the tortfeasor with prejudice, so

---

[91] *Id.* at 401.

[92] *Id.*

[93] *Id.*

[94] *Id.* at 402.

[95] *Id.*

[96] 233 Ga. App. 564, 565 (Ga. App. 1998).

[97] *Id.* at 565.

the plaintiffs were prevented from securing a judgment against the tortfeasor.[98] As a result, the court determined that the plaintiffs were barred from recovering UM benefits from their insurance carriers.[99]

As in *Kent*, Plaintiff's release operates to discharge the tortfeasors from any and all claims but includes a reservation. However, dissimilar to *Kent*, Plaintiff has not voluntarily dismissed with prejudice the tortfeasors following the execution of the release. Thus, the present case is also distinguishable from *Kent*. Considering these three cases, it does not appear that Georgia appellate courts have addressed a release similar to the one at issue here.

Considering that "the cardinal rule of construction is to determine the intention of the parties," Plaintiff asserts that her intention was "to ensure that her uninsured/underinsured claim would be preserved."[100] Plaintiff's reservation is general, but her intention was clearly to retain her right to bring a UM claim, which she could retain by limiting the release of the tortfeasors. Moreover, including the reservation in the release of the Barbacks and their insurance company indicates that the reservation is intended to apply to those parties; otherwise, it would be an unnecessary addition to the release. Thus, although the terms of the release and reservation may not be clear in combination, particularly in light of the above cases, the reservation evidences Plaintiff's intent to retain claims against the tortfeasor to the extent she was reserving her right to bring a UM claim.

However, it is currently unclear whether the executed release exhausted the policy limits of the tortfeasors' policy with State Farm. This is an issue of fact. Considering that the exhaustion

---

[98] *Id.*

[99] *Id.*

[100] Rec. Doc. 15 at 7.

18

of the liability insurer's policy limits is a condition for a limited release, a genuine question of material fact remains as to whether Plaintiff executed a limited release. Thus, the Court will deny GEICO's motion for summary judgment.

### D. *Whether GEICO Acted in Bad Faith by Rejecting Plaintiff's Claim*

In the petition, Plaintiff asserts that GEICO is liable for penalties for acting in bad faith by not paying Plaintiff's claim pursuant to La. Rev. Stat. 22:1973. In the motion, reciting a standard set by the Louisiana Supreme Court, GEICO asserts that it has presented a legitimate question as to whether it has any liability because Plaintiff has released her claims against the tortfeasor.

As explained above, Georgia law applies to the dispute. However, Georgia law does have a statute which imposes civil penalties for an insurer's bad faith refusal to pay a plaintiff's claim.[101] The Court of Appeals of Georgia has stated that "[i]n order to prevail on a claim for an insurer's bad faith, the insured must prove two conditions: (1) that a demand for payment was lodged against the insurer at least 60 days prior to filing suit and (2) that the insurer's failure to pay was motivated by bad faith."[102] That court has defined "bad faith" as "any frivolous and unfounded refusal in law or in fact to pay according to the terms of the policy."[103] Moreover, "bad faith penalties are not authorized 'where the insurance company has any reasonable ground to contest the claim . . . .'"[104] Considering that Plaintiff does not expressly reserve her claims against the tortfeasors in her added language and the lack of case law directly comparable to the facts present in this case, GEICO had

---

[101] *See* Ga. Code Ann. § 33-4-6 (2016).

[102] *Primerica Life Ins. Co. v. Humfleet*, 217 Ga. App. 770, 771 (Ga. App. 1995).

[103] *Amica Mut. Ins. Co. v. Sanders*, 335 Ga. App. 245, 250 (Ga. App. 2015).

[104] *Id.* (quoting *Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 731 (Ga. App. 2010)).

reasonable grounds to contest Plaintiff's claim. Thus, GEICO did not act in bad faith in denying Plaintiff's claim.

Accordingly,

**IT IS HEREBY ORDERED** that GEICO's "Motion for Summary Judgment or, Alternatively, Partial Summary Judgment" is **GRANTED** to the extent that GEICO seeks dismissal regarding Plaintiff's claim that GEICO acted in bad faith and **DENIED** to the extent that GEICO seeks dismissal regarding Plaintiff's UM claim.

**IT IS FURTHER ORDERED** that GEICO's "Ex Parte Motion to Strike Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment" is **DENIED**.[105]

**IT IS FURTHER ORDERED** that Plaintiff's "Motion for Leave to File Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment" is **GRANTED**.[106]

**NEW ORLEANS, LOUISIANA**, this  1st  day of May, 2018.

                                              **NANNETTE JOLIVETTE BROWN**
                                              **UNITED STATES DISTRICT JUDGE**

---

[105] Rec. Doc. 17.

[106] Rec. Doc. 18.